1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6

7

8

9

10

11

KIMBERLY L. JACOBSON,

                              Plaintiff,

         v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                              Defendant.

Case No. 3:10-cv-05251-KLS

ORDER REVERSING DEFENDANT'S
DECISION TO DENY BENEFITS AND
REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS

12

13

14

15

16

17

18

19

         Plaintiff has brought this matter for judicial review of defendant's denial of her

application for disability insurance benefits.  Pursuant to 28 U.S.C.§636(c), Federal Rule of Civil

Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the

undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining record, the

Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits be

reversed and remanded for further administrative proceedings.

20

                                   FACTUAL AND PROCEDURAL HISTORY

21

22

23

24

25

26

         On October 20, 2005, plaintiff filed an application for disability insurance benefits,

alleging disability as of May 20, 1999, due to fibromyalgia, an anxiety disorder, benign

hypermobile joint syndrome, multiple joint pain, lumbar facet dysfunction, paraesthesia,

sweating, bilateral hip pain, sciatica, bursitis in her hips, and hearing loss. See Tr. 8, 130, 145.

Her application was denied upon initial review and on reconsideration. See Tr. 8, 72, 83, 86.  A

hearing was held before an administrative law judge ("ALJ") on July 10, 2009, at which plaintiff,

ORDER - 1

represented by counsel, appeared and testified, as did a vocational expert. See Tr. 16-69.

On August 4, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 8-15.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 18, 2010, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R.§404.981.  On April 13, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1.  The administrative record was filed with the Court on June 8, 2010. See ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings before a different ALJ, because the ALJ erred: (1) in finding her anxiety disorder to be non-severe; (2) in assessing her credibility; (3) in evaluating the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; and (5) in finding her capable both of returning to her past relevant work and of performing other jobs existing in significant numbers in the national economy.  The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, hereby finds that while the ALJ's decision should be reversed, this matter should be remanded to defendant for further administrative proceedings.

<u>DISCUSSION</u>

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

ORDER - 2

F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision.  See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.    Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that her disability existed on or before" the date her insured status expired. Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status).  Plaintiff's date last insured was December 31, 2004. Tr. 10, 70.  Thus, to be entitled to disability insurance benefits, plaintiff must establish she was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.

II.    The ALJ's Step Two Determination

At step two of the sequential disability evaluation process,[1] the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

---

[1] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

ORDER - 3

1    An impairment is not severe only if the evidence establishes a slight abnormality that has

2    "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL

3    56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841

4    F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their

5    symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d

6    1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step

7    two inquiry, however, is a *de minimis* screening device used to dispose of groundless claims. See

8

9    Smolen, 80 F.3d at 1290.

10    In this case, the ALJ found plaintiff had severe impairments consisting of fibromyalgia

11    and headaches. See Tr. 10.  Plaintiff argues the ALJ erred in not also finding her anxiety disorder

12    to be a severe impairment.  With respect to that impairment, the ALJ found plaintiff's anxiety

13    had been "exacerbated by social stresses, such as her husband's reported gambling difficulties,"

14    which supported "a conclusion that any mental symptoms [we]re due to situational issues rather

15    than a clinical condition." Tr. 12.  The ALJ went on to find in relevant part:

16

17        There is some discussion of anxiety in the record (exhibit 3F), but no firm
        medical evidence; she reportedly presented well with a good sense of humor.

18        Other [state agency] reviewers found that the claimant had insufficient
        evidence to determine a severe mental impairment (exhibits l4F; l7F).  Those

19        reports show that the claimant did not have a severe medically-determined
        psychiatric condition during the time that the claimant was last insured.

20

21    Tr. 13.  The Court agrees the ALJ erred in finding the record failed to support a clinical condition

22    consisting of anxiety or an anxiety disorder, as clearly plaintiff has been diagnosed on more than

23    one occasion therewith. See Tr. 242-49, 251-52, 289.  Further, plaintiff is correct in stating that

24    just because a mental condition may be "exacerbated" by situational stresses, this does not mean

25    that the underlying condition does not actually exist.

26    That being said, the Court finds the ALJ did not err in determining plaintiff did not have a

ORDER - 4

"severe" anxiety disorder.  Plaintiff argues she was diagnosed as having "significant" anxiety by

one physician in late February 2003, that seemed "to trigger more problems with pain," and that

had been "very poorly treated at this point in time." See Tr. 289.  But the statements concerning

significant anxiety and triggering more problems are actually plaintiff's self-reports, and not the

diagnoses or opinions of the examining physician. See id.  None of this evidence, furthermore,

shows she was determined by the examining physician to have specific work-related limitations

resulting from her anxiety. See id.  In other words, the mere existence of an impairment or of

impairment-related symptoms alone "is insufficient proof of a disability." Matthews v. Shalala,

10 F.3d 678, 680 (9th Cir. 1993).  In addition, the record shows plaintiff seems to have improved

in her anxiety thereafter. See Tr. 242-43.

       Plaintiff also points out that she was under the care of a psychologist, but again the mere

fact that a claimant is receiving mental health treatment, without a showing that he or she suffers

from significant work-related limitations, is not sufficient to overcome a step two finding of non-

severity.  Plaintiff further notes that in a letter dated June 3, 2007, Curtis Holder, M.D., assessed

her with a global assessment of functioning ("GAF") of 40 "one year ago."[2] Tr. 392.  As pointed

out above, however, plaintiff must establish she was disabled prior to December 31, 2004, while

the above GAF score would be for the period no earlier than June 2006.  Therefore, the ALJ did

not err in declining to consider such evidence as being "not relevant to this matter", since it could

not "be reliably extrapolated to the time" plaintiff "was last insured." Tr. 12.  It should be noted

as well that Dr. Holder expressly stated plaintiff "largely had mild symptoms over the course of

---

[2] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007).  It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  "A GAF score of 31-40 is extremely low, and 'indicates . . . major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.'" Salazar v. Barnhart, 468 F.3d 615, 624 n.4 (10th Cir. 2006) (Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32).

ORDER - 5

her treatment in 03, 04, and 05." Tr. 392 (emphasis added).

Next, plaintiff argues the ALJ mischaracterized the record by citing to the state agency psychiatric review technique form completed by a non-examining psychologist, who found there was insufficient evidence of a disability prior to plaintiff's date last insured based on a mental health disorder. See Tr. 402-14. Plaintiff, though, fails to explain how the ALJ mischaracterized the record regarding this form. Rather, plaintiff appears to argue the ALJ had a duty to question the psychologist who completed this form. But it is unclear what additional relevant evidence, if any, would have been obtained if the ALJ had done so.

Plaintiff also points to a notation from a Social Security caseworker, in which it indicated that a certain un-named psychologist plaintiff reported she was seeing "was unable to send any" medical evidence or reports. Tr. 393. Plaintiff argues the ALJ should have attempted to obtain such evidence or reports. Again, however, it is not at all clear which psychologist plaintiff at the time or the caseworker was referring to – although it may have been Dr. Holder (see Tr. 392) – whether such evidence or reports actually exist or, even if they do, what findings or opinions, if any, they would contain. The Court finds the same is true in regard to plaintiff's argument that Dr. Holder likewise should have been contacted by the ALJ as well.

While it is true the ALJ has the duty "to fully and fairly develop the record and to assure the claimant's interests are considered," that duty "is triggered only when" the evidence in the record is "ambiguous" or when "the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted). Here, however, as explained above, plaintiff has failed to explain or show what evidence, if any, was missing that created a duty on the part of the ALJ to try to obtain, or to demonstrate that the record as it currently exists is so ambiguous or

ORDER - 6

inadequate as to allow a proper evaluation of the evidence contained therein.  Lastly, the Court

rejects plaintiff's contention that the ALJ erred in failing to address the limitations resulting from

her anxiety disorder or in considering the combined impact of that disorder and her other medical

impairments, as the contention lacks any specificity, and, as discussed above, the record supports

the ALJ in finding plaintiff's anxiety disorder has not had a significant impact, either alone or in

combination with other impairments, on her ability to work.[3]  As such, the Court finds the ALJ's

step two findings were proper.

III.   The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample v.

Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The Court should not "second-guess" this

credibility determination. Allen, 749 F.2d at 580.  In addition, the Court may not reverse a

credibility determination where that determination is based on contradictory or ambiguous

evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should

properly be discounted does not render the ALJ's determination invalid, as long as that

determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148

(9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted)].

The ALJ "must identify what testimony is not credible and what evidence undermines the

claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless

---

[3] See Carmicle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

ORDER - 7

affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ discounted plaintiff's credibility in part because examinations performed by one of plaintiff's treating physicians, Frederic S. Taylor, M.D., revealed that the use of "some medication and pacing techniques" had resulted in "relief of symptoms," unless she "engaged in strenuous activities," and that she "was treated with injection therapy and thereafter did very well for nearly a year after the date she was last insured." Tr. 12. The ALJ properly may discount a claimant's credibility on the basis of medical improvement. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). Dr. Taylor's treatment notes support the ALJ's findings here. See Tr. 257 ("doing well"); 259 ("doing well" with pacing, meditation and learning to relax); 327 ("excellent relief of pain" with trigger point injections).

Plaintiff counters that there is no indication she was completely pain free at this time, that in late November 2004, she reported her pain level as being "3/10" (Tr. 259), that she had been prescribed pain medication, and that Dr. Taylor did not terminate treatment due to improvement.

ORDER - 8

But there is no requirement that an ALJ find that all pain symptoms have disappeared or that

treatment was terminated or determined to be no longer necessary for the ALJ to base a finding

of lack of credibility on medical improvement.  Nor is the prescription of pain medication alone

indicative of a disabling level of pain.  Further, a pain level of only three out of 10 would appear

to fall within a mild, or at most moderate, level of pain, again an amount of reported pain, which

is not indicative of disability.

Plaintiff argues as well that a week after the trigger point injections she had received on

October 18, 2005, were noted to have provided excellent relief of pain, she reported that she had

experienced only "several good hours of relief" from those injections. Tr. 326-27.  These reports

though occurred nearly a year after plaintiff's date last insured, and the point of the ALJ here was

that this much time had passed between when plaintiff reported she was "doing well" just before

her insured status had expired, and late October 2005, when she again reported improvement in

her condition with treatment.  That is, during the relevant time period, and then extending for a

significant period of time thereafter, improvement was noted.  That such improvement thereafter

may have subsided or not have lasted as long as previously indicated, is not relevant for purposes

of plaintiff's current application.

The ALJ next discounted plaintiff's credibility in part for the following reasons:

> . . . [T]he claimant has some symptoms and limitations, but not to the point of
> disability.  Other evidence supports that conclusion. In 2004 she painted a
> room, and often did tasks where she worked 2-3 hours straight without a break
> (exhibit 4F).  She reports that she takes care of a family pet, did some light
> chores such as meal preparation and laundry, did some brief walking and local
> driving, and shopped.  She used a heating wrap for her pain (exhibit 5F).
> Overall, she described a sedentary life.  These activities are consistent with the
> residual functional capacity determined in this matter.

Tr. 12.  To determine whether a claimant's symptom testimony is credible, the ALJ may consider

his or her daily activities.  Smolen, 80 F.3d at 1284.  Such testimony may be rejected if the

ORDER - 9

claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7.  The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

Plaintiff argues the above activities do not provide a clear and convincing reason for the ALJ to discount her credibility.  The Court agrees that not all of the activities the ALJ set forth above indicate an ability to spend a substantial part of her day performing household chores.  On the other hand, painting a whole room – even a small one – does indicate a level of activity that is indicative of such an ability, and involves activity that clearly is transferrable to a work setting. Nor, contrary to plaintiff's claim, is there any indication that she was pacing herself at 20-minute intervals when she painted that room.  See Tr. 257.  In addition, the fact that plaintiff reported she tended "to work two to three hours straight without taking appropriate breaks" (Tr. 263), is also a clear indication that she is more capable than she has alleged.

The ALJ further discounted plaintiff's credibility in part because she "sat for 1.25 hours in the hearing and appeared comfortable" despite her allegations of disabling pain, and testified that she had read the seventh Harry Potter book, "which is 900+ pages" despite her claim that she suffered from "concentration loss." Tr. 11, 13.  Plaintiff does not challenge this latter finding other than, as noted above, to generally argue the activities listed by the ALJ are not sufficient to discount her credibility.  But clearly an ability to read a more than 900-page book is inconsistent with a claim of impaired concentration.  In regard to the former finding, plaintiff emphasizes the Ninth Circuit's ruling in Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984), in which "[t]he fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing," was found to provide "little, if any, support for the ALJ's ultimate conclusion that the claimant is

ORDER - 10

not disabled or that his allegations of constant pain are not credible."

But in so finding, the Ninth Circuit relied on its earlier decision in <u>Day v. Weinberger</u>, 522 F.2d 1154 (9th Cir. 1975), which held that an ALJ "<u>could, of course, consider</u> [a claimant's] general appearance . . . at the hearing," but that the ALJ in that case erred in relying in part on this basis to find the claimant not disabled, "[i]n light of the uncontradicted medical opinions" of the physicians in the record indicating the presence of significant limitations. <u>Id.</u> at 1156-57.  In <u>Gallant</u>, the Ninth Circuit likewise noted as well the overwhelming objective medical evidence in the record contradicted the ALJ's credibility findings. <u>See</u> 753 F.2d at 1455-56.  However, such is not the case here, as discussed herein.

More recent Ninth Circuit case law, furthermore, has continued to find proper the ALJ's reliance on a claimant's demeanor at the hearing as a basis for discrediting his or her testimony. <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 960 (9th Cir. 2002); <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1020 (9th Cir. 1992); <u>see</u> <u>also</u> <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1986) (inclusion of personal observations of claimant in ALJ's findings does not render decision improper).  The only caveat here is that the ALJ may not reject a claimant's subjective complaints "solely on the basis of" personal observations. SSR 95-5p, 1995 WL 670415 *2.  But again as discussed above, this was not the only basis on which the ALJ relied to discount plaintiff's credibility, nor, as just explained, was it an improper one.

IV.   The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably

germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The ALJ addressed the lay witness evidence in the record as follows:

The claimant's husband submitted a report[, dated January 1, 2007], stating that she had overall pain that occasionally limited her personal care; she paced her household chores at 20-minute intervals suggested by Dr. Taylor. She was essentially capable of only sedentary activity (exhibit 4 E). That assessment is given some weight, to the extent that it is consistent with the relevant medical information discussed above. Interestingly, a [state agency] interviewer met with the claimant in December 2006 and reported that she displayed no physical or mental difficulty whatsoever (exhibit 2E). And that was *after* her condition reportedly deteriorated earlier that year (exhibit 11F).

Tr. 12 (emphasis in original); see also Tr. 154-61. Plaintiff argues, and the Court agrees, that the ALJ's statement that the assessment her husband provided in his report was given some weight to the extent it was consistent with the relevant medical information, is not sufficiently specific to identify which portion of that information the ALJ was referring to here. But plaintiff ignores the second reason the ALJ gave to find her husband's assessment not fully credible – i.e., that during the month just prior to the date her husband completed that assessment, a state agency caseworker noted she had displayed "no physical or mental difficulty whatsoever." Tr. 12. This reason certainly was specific, and germane, to plaintiff's husband, and, therefore, is sufficient to uphold the ALJ's rejection of the lay witness evidence he provided.

V.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p,

ORDER - 12

1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work.  See id.  It thus is what the claimant "can still do despite his or her limitations."  Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record.  See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)."  Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments."  Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence."  Id. at *7.

The ALJ in this case assessed plaintiff with the following residual functional capacity:

> **. . . [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work . . . except: she could perform occasional crouching, kneeling, and crawling.  She should avoid exposure to hazards (such as heights and dangerous machinery), and should avoid concentrated exposure to humidity and extreme cold.**

Tr. 11 (emphasis in original).  Plaintiff argues that in so finding the ALJ erred by failing to assess whether she was capable of working on a regular and continuing basis.  "Ordinarily, [the] RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing basis**," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184 *2 (emphasis in original).  Further, the RFC assessment itself "must include a discussion of the individual's abilities on that basis."  Id. (emphasis added).

Plaintiff cites Reddick v. Chater, 157 F.3d 715 (9th Cir. 1998), to support her argument

ORDER - 13

here, in which the Ninth Circuit stated that "[b]ecause the ALJ's evaluation of residual functional capacity failed to address [the] claimant's ability to undertake sustained work activity, his analysis did not comport with the Social Security Administration's regulatory requirements." Id. at 724. The issue in Reddick, however, was not whether the ALJ was required to make an express finding that the claimant could work on a regular and continuing basis pursuant to SSR 96-8p, but whether the ALJ appropriately took into account the effects caused by the claimant's chronic fatigue syndrome on her ability to sustain work. That is, the ALJ had failed to properly address in assessing the claimant's RFC all of the medical evidence in the record regarding that impairment. That is entirely different from the issue here.

Rather, the Court adopts the approach taken by the Fifth Circuit in Frank v. Barnhart, 326 F.3d 618 (5th Cir. 2003), and Perez v. Barnhart, 415 F.3d 457 (5th Cir. 2005), wherein the ALJ was not required to make a specific finding as to a claimant's ability to sustain employment, but rather it was held that such a finding may be subsumed within the residual functional capacity assessment itself. In Frank, because nothing in the record suggested the claimant was unable to work on a sustained basis, the ALJ did not have to make an express determination as to whether work could be maintained on such a basis. 326 F.3d at 621. The Fifth Circuit thus rejected the claimant's argument that separate findings must be made "on 'obtaining' and 'maintaining' a job in every case, even cases in which" the claimant "does not suggest that there is any difference between the issue of his ability to work and his ability to sustain work." Id.; see also Perez, 415 F.3d at 466 (noting claimant failed to offer any evidence that his condition waxed and waned in intensity such that his ability to maintain work was not adequately taken into account in his RFC determination). Likewise, in this case plaintiff has failed to set forth specific reliable evidence to show that she is incapable of performing work on a regular and continuing basis.

ORDER - 14

Plaintiff further argues the ALJ failed to incorporate into the assessment of her RFC any limitations from her hearing deficit, medication side effects or headaches.  But again plaintiff has not pointed to any reliable evidence in the record to show her hearing deficit and headaches have resulted in specific significant work-related limitations the ALJ was required to adopt.  In regard to medication side effects, while the record shows she did experience them, particularly with in regard to prescribed medications, as discussed above, other evidence supports the ALJ in finding she had experienced improvement using other treatment modalities.  Further, as with her hearing problems and headaches, plaintiff has not demonstrated that she experienced any side effects from the forms of treatment she continued to follow or that if she did, that they had a significant impact on her ability to perform work-related activities.

For the same reasons, the Court rejects plaintiff's further assertion that the ALJ erred in failing to address any other limitations stemming from her anxiety disorder, hypermobile joint syndrome or lumbar facet dysfunction.  As for plaintiff's contention that the ALJ "did not even address" her "reduced concentration due to 'fibro fog'" (ECF #12, p. 21), as discussed above, the ALJ did not err in discounting plaintiff's credibility concerning her alleged "concentration loss," in light of her ability to complete a more than 900-page novel.  Plaintiff further asserts error on the part of the ALJ for not addressing her alleged difficulties in coping with stress, but once more she has failed to cite specific, reliable medical evidence in the record to show that she in fact had significant work-related limitations stemming therefrom.  In addition, the Court finds no error in the ALJ failing to specifically address the opinion of one physician that plaintiff's arm pain was likely due to her fibromyalgia, because the ALJ determined plaintiff's fibromyalgia was a severe impairment, and the existence of pain alone is not a work-related limitation.

On the other hand, the Court does agree that the ALJ erred in failing to adopt and include

ORDER - 15

1    in his RFC assessment – or to state why he rejected – the recommendation of Dr. Taylor in mid-

2    September 2004, that plaintiff "should design jobs and activities in 20-minute segments," with "a

3    five-minute interval for resting and relaxation." Tr. 268.  Although the ALJ did limit plaintiff to

4    a modified range of sedentary work, Dr. Taylor gave no indication his recommendation did not

5    also apply to sedentary activities.  On the other hand, the Court rejects the argument that the ALJ

6    was required to credit as true this limitation, given that, as discussed above, much of the medical

7    and other evidence in the record appear not to support plaintiff's claim of disability.  Rather, as

8    explained below, remand for further consideration thereof is warranted.

9

10   VI.    The ALJ's Step Four Determination

11          At step four of the sequential disability evaluation process, the ALJ found in relevant part

12   as follows:

13          **. . . Through the date last insured, the claimant was able to perform her**
14          **past relevant work . . .**

15          A vocational expert, Merrill Cohen, M.C., testified at the hearing.  He
16          described the claimant's past relevant work as a mortgage loan processor, data
             entry clerk, and administrative clerk; these occupations were sedentary, semi-
17          skilled occupations.  When asked to assume a hypothetical person of the
             claimant's age, education, past work, and residual functional capacity, Mr.
18          Cohen testified that such a person could perform the claimant's past work as a
             mortgage loan processor (DOT [Dictionary of Occupational Titles] 249.362-
19          022), and data entry clerk (DOT 203.582-054).

20          The undersigned finds that the hypothetical question accurately describes an
             individual of the claimant's vocational factors and functional limitations.  The
21          evidence supports a finding that the claimant's work as a mortgage loan
             processor and data entry clerk did not require the performance of work
22          activities precluded by her impairments, and at the time she was last insured
             she could return to her past relevant work. She is therefore not disabled.
23

24   Tr. 14 (emphasis in original).  Plaintiff has the burden at step four to show that she is incapable

25   of returning to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

26

ORDER - 16

Here, plaintiff argues the ALJ erred by failing perform the function-by-function analysis of her past relevant work. The Court disagrees.

To find a claimant not disabled at step four of the sequential disability evaluation process, the ALJ must find the claimant is able to perform "[t]he actual functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (emphasis added). To meet this requirement, furthermore, "[t]he vocational expert merely has to [testify] that a claimant can or cannot continue his or her past relevant work as defined by the [Social Security] regulations." Id. On the other hand, "the best source for how a job is generally performed is usually the" DOT. Id.; see also SSR 82-62, 1982 WL 31386 *3, (stating that while claimant is primary source for vocational documentation, and statements by claimant regarding past work are generally sufficient for determining skill level and exertional non-exertional demands of such work, determination of ability to do past relevant work in some cases requires supplementary or corroborative information from other sources such as DOT on requirements of work as generally performed in economy).

Here, as pointed out by defendant, the ALJ relied on the vocational expert's testimony in regard to plaintiff's past relevant work as it is generally performed in the economy, which in turn was based both on plaintiff's testimony and the description of her past relevant work contained in the DOT. See Tr. 60-63. The ALJ, therefore, did not err in relying on the vocational expert's testimony at step four. Nor did the ALJ err in failing to adopt the vocational expert's additional testimony that a limitation to occasional keyboarding would preclude performance of plaintiff's past relevant work. Plaintiff argues without any specific citation to evidence in the record, that such a limitation is "reasonable . . . under the facts of this case" (ECF #12, p. 21), but the Court

ORDER - 17

finds no evidence to support any manipulative restriction in this regard, but rather the opposite

appears to be indicated (see Tr. 397, 422).  On the other hand, given the ALJ's failure to properly

address the 20-minute pacing limitation recommended by Dr. Taylor, it is not entirely clear that

plaintiff would be capable of performing her past relevant work, should that limitation eventually

be determined by defendant to be supported by the record.

VII.   The ALJ's Findings at Step Five

       If a claimant cannot perform his or her past relevant work, at step five of the disability

evaluation process the ALJ must show there are a significant number of jobs in the national

economy the claimant is able to do. See Tackett, 180 F.3d at 1098-99; 20 C.F.R.§404.1520(d),

(e).  The ALJ can do this through the testimony of a vocational expert or by reference to

defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101;

Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

       An ALJ's findings will be upheld if the weight of the medical evidence supports the

hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987);

Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony

therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See

Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the

claimant's disability "must be accurate, detailed, and supported by the medical record." Id.

(citations omitted).  The ALJ, however, may omit from that description those limitations he or

she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

       As noted above, the ALJ at the hearing posed a hypothetical question to the vocational

expert, containing substantially the same limitations as were included in the ALJ's assessment of

plaintiff's residual functional capacity. See Tr. 61.  Also as noted above, the vocational expert

ORDER - 18

testified in response thereto that an individual with those limitations – and who had the same age,

education and work background as plaintiff – would be able to perform plaintiff's past relevant

work. See id.  In addition, the vocational expert testified that plaintiff could perform other jobs.

See Tr. 63-66.  Based on the vocational expert's testimony, the ALJ found in relevant part that at

step five of the sequential disability evaluation process:

> The vocational expert testified that the claimant's past relevant work as a data entry clerk was semi-skilled . . . and required the following skills: keyboarding, and reviewing information.
>
> . . .
>
> The vocational expert was asked whether there were occupations that could be performed by an individual having the same age, education, past relevant work experience, and residual functional capacity as the claimant had through the date last insured.  The vocational expert responded and testified that representative occupations such an individual could have performed include: **receptionist** . . . ; and the unskilled job of **bonder, semiconductor** . . .
>
> Accordingly, although the claimant's additional limitations did not allow the claimant to perform the full range of sedentary work, considering the claimant's age, education and transferable work skills, a finding of "not disabled" is appropriate . . . even if she could not perform her past relevant work.

Tr. 14-15 (emphasis in original).

Plaintiff argues that because the ALJ based his step five finding on the presence of her

transferrable skills, including keyboarding and reviewing information, and because, she asserts,

reviewing information does not meet the definition of the term "skill" contained in SSR 82-41,

1982 WL 31389, that step five finding cannot stand.  Plaintiff focuses on the statement in SSR

81-41 that "[a] skill is knowledge of a work activity which requires the exercise of significant

judgment that goes beyond the carrying out of simple job duties." Id. at *2.  But this definition

clearly can encompass reviewing information, as that task generally requires the ability to judge

– depending on the particular job and type of information being reviewed, of course – whether,

ORDER - 19

for example, the information is correct, should be added to or subtracted from or with respect to which some sort of action needs to be taken.  As such, reviewing information certainly could be on par with an activity such as "making precise measurements," which is one example of a skill given in the above Social Security Ruling. Id.

More importantly, though, as noted above, the vocational expert also identified a job that plaintiff could do, which is unskilled and thus did not require the presence of transferrable skills. Accordingly, the ALJ did not err here.  Nor does plaintiff's assertion that "it is highly unlikely that a person with chronic pain and fatigue who takes strong pain medication could keep up with the pace and keyboarding required for any of" the jobs identified provide a valid basis for finding fault with the ALJ's step four or step five determinations, as this is mere speculation and opinion on the part of plaintiff and, as discussed above, is not supported by specific, reliable evidence in the record. See ECF #12, p. 22.

Also without merit is plaintiff's claim that the ALJ erred in not making any assessment of the effectiveness of her hearing aids "if the noise in a work area is 'moderate'" (id.), as again no evidence in the record is cited by plaintiff – nor does the Court find any – to support a finding of difficulties in this regard.  Plaintiff further states there is no evidence she can perform repetitive or frequent handling and fingering tasks on a sustained basis, but clearly, as discussed above, the record does contain such evidence. See Tr. 397, 422.  Thus, this claim too is without merit.  On the other hand, also as discussed above, given the ALJ's error in failing to properly address Dr. Taylor's recommendation regarding designing jobs and activities in 20-minute segments, it is not entirely clear the hypothetical question the ALJ posed is accurate, and thus whether the step five determination of the ALJ is supported by substantial evidence.

ORDER - 20

VIII.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to the medical evidence from Dr. Taylor, plaintiff's RFC and her ability to perform both her past relevant work, as well as other jobs existing in significant numbers in the national economy, remanding this matter to defendant for further administrative proceedings is appropriate here.

As noted above, plaintiff argues Dr. Taylor's opinion should be credited as true in light of the ALJ's error in failing to properly evaluate it.  Where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is

credited "as a matter of law." <u>Lester</u>, 81 F.3d at 834 (citation omitted).  But where the ALJ is not required to find the claimant disabled on the crediting of evidence, such as is the case here, this constitutes an outstanding issue that must be resolved, and thus the <u>Smolen</u> test will not be found to have been met. <u>See</u> <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir. 2003).  Further, also as is the case here, "where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." <u>Bunnell</u>, 336 F.3d at 1116.

CONCLUSION

Based on the foregoing discussion, the Court finds that the ALJ improperly concluded plaintiff was not disabled, and therefore hereby reverses the ALJ's decision and remands this matter to defendant to conduct further administrative proceedings in accordance with the findings contained herein.  While plaintiff requests that this matter be given to a different ALJ on remand, plaintiff fails to explain why such an order is required, and therefore the Court declines to do so in this case.

DATED this 17th day of February, 2011.


Karen L. Strombom
United States Magistrate Judge

ORDER - 22